UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT DOAN,

                                CASE NO. 5:07-CV-13957
                Plaintiff,      JUDGE JOHN CORBETT O'MEARA
                                MAGISTRATE JUDGE PAUL J. KOMIVES

v.

ALLSTATE INSURANCE COMPANY,

                Defendant,

_____/

**OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S REQUESTS FOR**
**ADMISSION AND MOTION FOR PROTECTIVE ORDER (Doc. Ent. 16)**

Table of Contents

I.   OPINION ................................................................ 2
     A.   Background ...................................................... 2
     B.   The Instant Motion .............................................. 2
     C.   Applicable Law .................................................. 3
          1.   Fed. R. Civ. P. 26 ......................................... 4
          2.   Fed. R. Civ. P. 36 ("Requests for Admission") ............. 5
     D.   Analysis ........................................................ 6
          1.   Fourteen (14) of the Requests for Admission do not appear to be at issue.
               ..................................................... 6
          2.   Defendant objects to several Requests for Admission on the basis of
               relevance, confidentiality and/or that it seeks trade secret information. . . 7
          3.   Thirteen (13) of the Requests for Admission (Nos. 7-13, 17, 19-20, 29, 31-
               32) concern CPMS or CCPR. ................................. 16
          4.   Three (3) of the Requests for Admission (Nos. 14-16) concern McKinsey
               Consulting, Inc. .......................................... 21
          5.   The remaining four (4) Requests for Admission (Nos. 22, 23, 24, 25)
               appear to relate to Florida litigation. ................... 22
          6.   A protective order will not be entered at this time. ...... 23

II.  ORDER ............................................................... 26

## I. OPINION

### A. Background

This case concerns coverage for injuries plaintiff suffered as a result of a February 13, 1993, motor vehicle accident. On September 19, 2007, plaintiff filed the instant complaint against defendant, alleging (I) silent fraud, (II) fraud/misrepresentation, (III) breach of contract, and (IV) negligence; as well as (V) a violation of the Michigan Consumer Protection Act. Doc. Ent. 1.

Defendant filed an answer to the complaint on October 11, 2007. Doc. Ent. 3; Doc. Ent. 16-2. Among defendant's affirmative defenses is "[t]he Plaintiff has failed to support its claim herein with reasonable proof as to the fact and amount of loss pursuant to 3142 of the No-Fault Statute[.]" Doc. Ent. 3 at 8 ¶ 1 (citing Mich. Comp. Laws § 500.3142 ("Personal protection benefits, time payable, overdue payments, interest")).[1]

### B. The Instant Motion

On February 21, 2008, plaintiff served defendant with his first request for admissions, numbered one (1) to thirty-four (34). Request Nos. 7 and 8 inquire about a Claim Performance Measurement System (CPMS). Others, such as Request Nos. 9, 10, 11, 12, 13, 17, 19, 20, 29, 31, 32, concern mention Claim Core Process Redesign (CCPR). Some, such as Request Nos. 14, 15 and 16, concern McKinsey Consulting, Inc. On the same day, plaintiff served defendant with his first request for production of documents, numbered one (1) to thirty-three (33). Request Nos. 19, 20 and 32 concern CCPR documents.

---

[1]Personal protection insurance benefits "are also known as 'first party' or 'PIP' benefits." *McKelvie v. Auto Club Ins. Ass'n*, 459 Mich. 42, 44 n.1, 586 N.W.2d 395 (1998).

On March 21, 2008, defendant served answers to plaintiff's first request for admissions. On the same day, defendant filed a motion to strike plaintiff's requests for admission and motion for protective order. Doc. Ent. 16. Defendant contends that these requests "are wholly irrelevant, unduly burdensome, have no bearing on the present litigation and request the disclosure of confidential, proprietary and wholly irrelevant information." Doc. Ent. 16 at 6 ¶ 5. Defendant seeks an order striking the requests for admission and barring the disclosure of the requested documents. Doc. Ent. 16 at 8. It claims the requests seek information "relative to Defendant's internal third party claims handling policies and procedures." Doc. Ent. 16 at 10.

On March 24, 2008, defendant served answers to plaintiff's first request for production of documents. In part, defendant's answers to Request Nos. 15-25 and 28-33 "direct the Plaintiff to the Defendant's Motion for Protective Order and Motion to Strike previously filed."

On April 7, 2008, plaintiff filed a response. Doc. Ent. 21. He asks the Court to deny defendant's motion and "award Plaintiff his costs and attorney fees." Doc. Ent. 21 at 2-3.

Judge O'Meara referred this motion to me for hearing and determination. Doc. Ent. 17. A hearing on this motion was noticed for April 30, 2008. Doc. Ent. 19. However, it was rescheduled for May 12, 2008. On the date set for hearing, attorneys Thomas A. Biscup and Donald C. Brownell appeared in my courtroom. At the conclusion of oral argument, I took defendant's motion under advisement.[2]

## C.    Applicable Law

---

[2]During the hearing, the Court was provided with the Table of Contents for "Homeowners Review Documents;" "Auto Physical Damage Review Documents;" "Field Work and Additional Documents;" and "Casualty Review Documents" from http://media.allstate.com.

"Sixth Circuit precedent firmly establishes that '[i]n federal diversity actions, state law governs substantive issues and federal law governs procedural issues.'" *Long v. Adams*, 411 F.Supp.2d 701, 705 (E. D. Mich. 2006) (Lawson, J.) (citing cases) (opinion and order denying defendants' motion for summary judgment). "Discovery in federal courts is generally governed by the Federal Rules of Civil Procedure regardless of whether federal jurisdiction is based on a federal question or diversity of citizenship." *Moses v. Providence Hosp. and Medical Centers, Inc.*, No. 04-CV-74889-DT, 2007 WL 1806376, 2 (E.D. Mich. June 22, 2007) (Morgan, M.J.) (citing *Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644 (D. Colo., 2004); *Everitt v. Brezzel*, 750 F.Supp. 1063, 1065 (D. Colo.1990)).

## 1.    Fed. R. Civ. P. 26

Fed. R. Civ. P. 26(b) governs the scope and limits of discovery. In pertinent part, it provides that "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(1).

Fed. R. Civ. P. 26(c) governs protective orders. In provides, in part, that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the

district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(G). "To resist discovery under Rule 26(c)(7),[3] a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action. The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure. If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the trade secrets should be disclosed, unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325-326 (10th Cir. 1981) (footnotes and citations omitted).[4]

---

[3]"Former Rule 26(c)(7) is currently codified at Fed.R.Civ.P. 26(c)(1)(G)." *Proven Methods Seminars, LLC v. American Grants & Affordable Housing Institute*, 2008 WL 282374, 3 n.3 (E.D. Cal. Jan. 31, 2008).

[4]Defendant cites my December 22, 2006, opinion and order in *Laborers Pension Trust Fund-Detroit and Vicinity v. CRS Poured Concrete Walls, Inc.*, Case No. 04-CV-74714-DT, which cited *Centurion Industries, Inc.* and wherein I concluded that defendants had not shown a substantial need for the requested information as contemplated by Fed. R. Civ. P. 45(c)(3)(B)(i). Doc. Ent. 16 at 18; Doc. Ent. 16-5 at 1-9.

"If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery."  Fed. R. Civ. P. 26(c)(2).

**2.      Fed. R. Civ. P. 36 ("Requests for Admission")**

"A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:  (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  Fed. R. Civ. P. 36(a)(1).  "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  Fed. R. Civ. P. 36(a)(4).  "The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial."  Fed. R. Civ. P. 36(a)(5).

**D.      Analysis**

**1.      Fourteen (14) of the Requests for Admission do not appear to be at issue.**

Defendant has either admitted or denied Request Nos. 1, 2, 4, 5, 21, 30 & 34. Furthermore, defendant has stated that it is "unable to admit or deny" Request Nos. 3 and "neither admits nor denies" Request No. 18.  Each of these requests states why it cannot be admitted or denied.  Also, a fair reading of defendant's answers to Request Nos. 6, 26 and 33

indicates that defendant neither admits nor denies the request. These answers give some explanation as to why the request cannot be answered, such as "it is unclear . . . what the Plaintiff intends to encompass by this request[,]" and/or the request is not appropriately "limited in terms of time or scope." Finally, defendant's answers to Request Nos. 27 and 28 refer plaintiff to defendant's answer to Request No. 26.

2.  **Defendant objects to several Requests for Admission on the basis of relevance, confidentiality and/or that it seeks trade secret information.**

a.  Defendant's motion concerns CPMS, CCPR and McKinsey documents, and Florida litigation. The related Requests for Admission are Request Nos. 7 and 8, which inquire about a Claim Performance Measurement System (CPMS); Request Nos. 9, 10, 11, 12, 13, 17, 19, 20, 29, 31 and 32, which mention Claim Core Process Redesign (CCPR); Request Nos. 14, 15 and 16, which concern McKinsey Consulting, Inc.; and Request Nos. 22, 23, 24, 25 which appear to relate to Florida litigation.

In its motion, defendant characterizes the issue in this lawsuit as "whether under the Michigan No-Fault Act, Plaintiff is entitled to additional benefits and compensation, beyond which has already been paid." Doc. Ent. 16 at 5 ¶ 3. According to defendant, plaintiff is "asserting a first party claim in this action under the Michigan No-Fault Act. As such, information relative to the handling of third party claims is wholly irrelevant to Plaintiff's cause of action." Doc. Ent. 16 at 6 ¶ 9. Defendant contends that "[t]he information sought by Plaintiff in the aforereferenced Requests is unique to Allstate's claim handling process, has independent economic value to Allstate, was prepared at great expense to Allstate, is not provided to other carriers, with access to said information limited to a small group of authorized individuals." Doc. Ent. 16 at 7 ¶ 12. Defendant also contends that "[n]ot only is the information requested by

Plaintiff trade secrets, it comprises confidential and proprietary information which is highly protected by Allstate." Doc. Ent. 16 at 7 ¶ 13. Defendant claims that the information sought by plaintiff's Requests for Admission "will cause detrimental harm to Defendant if released and made accessible to competitors[.]" Doc. Ent. 16 at 8 ¶ 15.

**In its motion brief, defendant argues that "[t]he CPMS, CCPR and McKinsey documents are irrelevant in the handling of first party claims." Doc. Ent. 16 at 11-15.** Within this argument, defendant contends that "the sole substantive issue in this case is Plaintiff's claim for and alleged entitlement to benefits under the Michigan No-Fault Act, [and] [t]he No-Fault Act is all encompassing as it pertains to first party claims." Defendant contends that it "[t]here is no other law, provision, policy or procedure that governs a claimant's right or Michigan No-Fault insurers handling of PIP benefits, outside that bound within the Michigan No-Fault Act[;]" therefore, defendant "relies solely upon the Michigan No-Fault Act." Doc. Ent. 16 at 11. Relying upon the Sullivan and Bloom affidavits,[5] defendant contends that "the

_____

[5]In support of its motion, defendant provides a copy of plaintiff's November 14, 2007, motion to compel defendant to produce documents and other things pursuant to M.C.R. 2.310 and M.C.R. 2.313 in *Blose v. Allstate Insurance Company*, Case No. 06-078759-NF (Oakland County Circuit Court), which Judge Nanci J. Grant denied on November 28, 2007. Doc. Ent. 16-4 at 1-7, 8.

The November 26, 2007, affidavits of Christine Sullivan and Timothy Bloom were filed in the *Blose* matter. Doc. Ent. 16-4 at 9-13, 14-15. The Sullivan affidavit states in part that "[b]eginning in the early-1990s, Allstate and an outside consulting firm it retained, [McKinsey],conducted a top-to-bottom review of Allstate's automobile bodily injury claim-handling practices and procedures[;]" "[CCPR] consists of internal policies, methods, and procedures developed by Allstate for handling claims. CCPR [and related materials] were developed at a considerable investment of time, manpower and financial resources on the part of Allstate[;]" "[t]his set of [approximately 12,900 pages of] documents is referred to as the 'McKinsey documents[;]'" "[t]he McKinsey documents and the 2000 CCPR Manual are a compilation of materials which derive independent economic value from not being generally known to other companies and competitors who can obtain economic value from the disclosure of the McKinsey documents or the 2000 CCPR Manual. To maintain its competitive advantage, Allstate has consistently treated the McKinsey

documents to which Plaintiff refers are not used in the handling of Michigan No-Fault first party

personal protection claims."  According to defendant, "[s]aid materials are not used in the

negotiating, handling or adjusting of first party claims, such as those that serve as the subject

matter of this lawsuit."  Also, defendant contends, neither the adjusters handling plaintiff's claim

nor plaintiff's file reference these materials.  Doc. Ent. 16 at 12.  Citing Fed. Rules of Evid. 401

("Definition of 'Relevant Evidence'.") and 402 ("Relevant Evidence Generally Admissible;

Irrelevant Evidence Inadmissible."), and *Howerton ex rel. Howerton v. Blomquist*, 240 F.R.D.

378, 380-382 (E.D. Mich. 2007) (Borman, J.) (granting defendant's motion in limine), defendant

contends that matters contained in personnel files or in company compensation policies does not

have a bearing "on the handling of Plaintiff's claim, or the handling or adjusting of any first

party claim."  Doc. Ent. 16 at 13-15.  Defendant contends that requests for such information are

irrelevant and "outside the permissible scope of discovery."  Defendant explains that "the

McKinsey documents (including CPMS and CCPR) bear no relevance in this matter and have

nothing to do with which first party benefits are legitimate claims and in turn, the rate at which

said legitimate claims, if any, should be compensated."  Doc. Ent. 16 at 15.

---

documents and the 2000 CCPR Manual as confidential, proprietary, and trade secrets[;]" "[i]n
litigation where Allstate believes that the McKinsey documents and the 2000 CCPR Manual are
discoverable, Allstate has generally requested confidentiality orders protecting the McKinsey
documents and the 2000 CCPR Manual including prohibiting their disclosure or use outside of the
instant litigation[;]" and "[n]either the McKinsey documents nor the 2000 CCPR Manual address
or discuss Michigan No-Fault law, generally, or the provision of attendant care benefits under
Michigan no-fault law, specifically."  Doc. Ent. 16-4 ¶¶ 2, 3, 4, 6, 8, 13.

     The Bloom affidavit states in part that "the handling adjusters who have adjusted claims
submitted by Nancy H. Blose and William K. Blose do not rely upon nor do they receive any
guidance from the 'McKinsey slides[;]'" and the Colossus "documents . . . have no relevance to the
handling of this claim as Colossus is not a program or tool used in the adjustment of Michigan No-
Fault claims for personal injury protection benefits."  Doc. Ent. 16-4 at 15 ¶¶ 3, 4.

**Defendant also argues that "[t]he CCPR, CPMS, and McKinsey documents are proprietary, privileged and confidential." Doc. Ent. 16 at 17-26.** Within this argument, defendant relies upon *Hamilton v. State Farm Mutual Automobile Insurance Company*, 204 F.R.D. 420, 424-425 (S.D. Ind. 2001) (denying defendant's motion for entry of its proposed protective order but finding that good cause existed for entry of a modified protective order "to secure its trade secrets and other confidential information. "). Doc. Ent. 16 at 19-21. Defendant also relies upon *Republic Services, Inc. v. Liberty Mutual Insurance Companies*, No. Civ.A. 03-494-KSF, 2006 WL 1635655 (E.D. Ky. June 9, 2006) (Todd, M.J.). Doc. Ent. 16 at 21-23, Doc. Ent. 16-5 at 10-20. In *Republic Services, Inc.*, the court determined that defendant's "claims handling and training materials" were "information . . . of independent value due to its confidential nature[;]" "information . . . of economic advantage to competitors if disclosed[;]" and "information . . . reasonably kept secret[.]" *Id.* at *2-*6. The court further stated that "under Kentucky's definition of a 'trade secret,' [defendant] ha[d] established that its 'claims handling and training materials' are trade secret information because it (1) is of independent economic value due to its confidential nature, (2) would be of economic advantage to competitors if disclosed, and (3) is reasonably kept secret." *Id.* at *6.

The court further determined that "disclosure would cause significant harm to Liberty's competitive and financial position[;]" "disclosure would result in an uncompensated taking of Liberty's property[;]" and "Liberty's interest [outweighed] the interest of the plaintiff or the public[.]" *Id.* at *7-*8. Therefore, the court concluded that "Liberty ha[d] established good cause for the entry of a protective order relating to its claims handling and training materials." *Id.* at *8. It further stated: "Liberty has already provided plaintiff with its claims handling and

training materials; therefore, a protective order will not prevent plaintiff from having full access to the documents at issue; it simply will prevent dissemination of these materials for use outside of this litigation." *Id*. at *8.

Finally, in support of its argument that "the documents are . . . entitled to protection as they constitute confidential research, development, and commercial information of Allstate[,]" defendant cites *Kerns v. Caterpillar, Inc.*, No. 3:06-cv-1113, 2008 WL 351233 (M.D. Tenn. Feb. 7, 2008) (granting in part and denying in part motions to compel and for protective order), *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir. 1983) (denying petition for a writ of mandamus), and *Republic Services, Inc.* Doc. Ent. 16 at 25-26. Plaintiff claims that Fed. R. Civ. P. 26(c)(1)(G) is meant "to protect from disclosure material that would harm the disclosing party by placing them at a competitive disadvantage." Doc. Ent. 16 at 25-26.

**b.** In response, plaintiff contends that defendant has not met its burden in seeking a protective order. Doc. Ent. 21 at 5. **Plaintiff argues that the discovery sought is relevant. Doc. Ent. 21 at 7-14.** As plaintiff points out, "the standard of relevance as a limitation on discoverability is distinct from the standard of relevance which governs the admissibility of evidence at trial." *Tavoulareas v. Piro*, 93 F.R.D. 11, 21 (D.D.C., 1981) (citing *Smith v. Schlesinger*, 513 F.2d 462, 473 (D.C.Cir.1975); *Freeman v. Seligson*, 405 F.2d 1326, 1335 (D.C.Cir.1968)). Doc. Ent. 8-9. According to plaintiff, "[d]efendant seeks to withhold discovery without the specific, particularized showing necessary for a protective order and seeks to withhold discovery based on the trial standard of relevance." Doc. Ent. 21 at 9.

**Specifically, plaintiff contends that "[t]he information is relevant to first party claims[,]" and "[t]he information is relevant to the claims brought by Plaintiff."** Doc. Ent.

21 at 10-11, 11-14. In support of his claim that the McKinsey, CCPR, and CPMS information is relevant to first party claims, plaintiff points to the April 3, 2008, declaration of James Mathis in response to defendant's objections and responses to plaintiff's first request for production. Doc. Ent. 21 at 10-11; Doc. Ent. 21-4, 21-5. In part, Mathis states:

> 12.     In my experience with Allstate, regular circulars and reports were put out by each region, including each unit's performance on claims in the different coverages in terms of both average paid and average pendings. These reports "*CCPR Tracking Reports*" as listed in the Desk Level CPMS, *"Claim Performance Measurement System*" were used as a motivational vehicle to encourage the use of claim handling tools such as IME's, paper reviews, retrospective reviews, retroactive reviews, billing audits and utilization reviews in the handling of first party injury claims. (*See Attached as Exhibit Eight, "Claim Performance Measurement System"*)[.]

> 13.     I became intimately involved with cost containment measures implemented by Allstate during my tenure with the company. I am aware there are numerous manuals, guidelines and memoranda that were regularly disseminated among Allstate claims centers uniformly throughout the nation including the [S]tate of Michigan.

Doc. Ent. 21-4 at 4 ¶¶ 12, 13 (footnote omitted). Plaintiff asserts that Mathis's affidavit "demonstrates the applicability and relevance of the requested information to Michigan and to first party claims." Doc. Ent. 21 at 11. Noting that the issue here is discoverability, and not admissibility at trial, plaintiff argues that he is "entitled to review the answers to [his] requests for admission to determine whether the information helps or hurts [his] claim." Doc. Ent. 21 at 11.

In support of his claims that the information he seeks is relevant to his claims, plaintiff contends that "[t]he information sought bears on the contract claim as well as the tort and statutory claim." Doc. Ent. 21 at 11. Plaintiff argues that "Allstate's motivations, incentives, and initiatives are relevant to the torts it committed (at a minimum, they bear on the intentional

nature of the fraud)[.]" Doc. Ent. 21 at 12.[6]  Plaintiff provides the March 10, 2003, affidavit of

Shannon L. Brady Kmatz, SCLA, which states in part, "A major emphasis under CCPR was to

simply pay less on claims.  We were told to use methods such as Fast Track, Colossus, MIST

referrals, SIU referrals, discouraging legal representation through the attorney economics script,

the 9 step method and other processes used to reduce the MCO severities which are the average

claim payments."  Doc. Ent. 21-6 ¶ 15.

Plaintiff also relies upon this Court's decisions in *Van Emon v. State Farm Mutual Auto

Insurance, Co.*, No. 2:05-cv-72638-GCS-DAS.  Doc. Ent. 21 at 12-13.  On March 26, 2007,

Magistrate Judge Scheer entered an order denying defendant's motion for a protective order in

regard to plaintiff's fourth request for production and first request for admissions.  Case No. 05-

72638 (Doc. Ent. 120); Doc. Ent. 21-8.  On October 18, 2007, Magistrate Judge Scheer entered

an order granting in part and denying in part defendant's motion for reconsideration which

limited plaintiff's use of the documents to that particular case.  Case No. 05-72638 (Doc. Ent.

167).  On January 24, 2008, Judge Steeh entered an order which in part affirmed Magistrate

Judge Scheer's October 18, 2007, orders.  *Van Emon v. State Farm Mutual Auto Insurance, Co.*,

No. 2:05-cv-72638, 2008 WL 205243 (E.D. Mich. Jan. 24, 2008); Doc. Ent. 21-7.

Additionally, plaintiff relies upon a January 12, 2007, order granting plaintiffs' motion to

compel in *Parks v. Allstate Property and Casualty Insurance Company*, Case No. 05-2-29837-5

SEA (King County Superior Court, State of Washington) (granting plaintiffs' motion to compel,

---

[6]Plaintiff contends that "the information on claims handling is relevant to no fault claims as well."  Doc. Ent. 21 at 12 n.4 (citing *Douse v. Farm Bureau General Insurance Company*, No. 274230, 2007 WL 4415494 (Mich. App. Dec. 18, 2007) (affirming in part and reversing in part trial court's rulings on motions for summary disposition).

directing Allstate to produce McKinsey slides, and denying defendant's request for a protective order) (Doc. Ent. 21-9), and the case of *Allstate Insurance Company v. Scroghan*, 851 N.E.2d 317 (Ind. App. 2006) (affirming in part and reversing in part "trial court's imposition of sanctions for its violation of a discovery order and for its failure to properly designate its Ind. Trial Rule 30(B)(6) representatives."). Doc. Ent. 21 at 13.[7]

Plaintiff contends that "[t]he information sought and the principles and programs implemented by Allstate were designed to save money on claims and provided a powerful incentive to its employees to do so." In support of this statement, plaintiff relies not only upon the affidavits of Mathis and Kmatz, but also the April 21, 2003, affidavit of Maureen Reed, Esq. (Doc. Ent. 21-10)[8] and the March 28, 2000, affidavit of Linda F. Brow (Doc. Ent. 21-11)[9]. Plaintiff contends that "[s]uch incentives and programs are relevant to the issues and claims made by Plaintiff." Doc. Ent. 21 at 14.

**Plaintiff also argues that "[t]here is no other basis for a protective order." Doc. Ent. 21 at 14-16. Within this argument, plaintiff contends that "[t]he information and materials are not entitled to trade secret protections[,]" and "[t]he requests are not unduly burdensome."** In addition to citing the Reed and Mathis declarations and noting that the

---

[7]Additionally, plaintiff refers to the cases attached to the Mathis affidavit. Doc. Ent. 21 at 14; Doc. Ent. 21-5 at 17-68 (*Deer v. Allstate*, Case No. 0516-CV24031 (Jackson County, MO); *McCallum v. Allstate*, Case No. 06-2-09493-5 (Wash. App.); *Hensel v. Allstate*, Case No. 3AN-02-7154 CI (Alaska Superior Court)).

[8]For example, Reed states that "[a]fter CCPR was implemented, staff counsels' performance evaluations and bonuses were heavily based on the number of trials conducted and the percentage of trial 'victories.'" Doc. Ent. 21-10 at 2 ¶ 7.

[9]For example, Brow states that CCPR "increased resentment among claims personnel that the company made large profits on this program, but the claim representatives in the units were given only token increases, with a few exceptions." Doc. Ent. 21-11 at 2 ¶ 9.

"Allstate Claim Policy Practices Procedures Manual" was copyrighted (Doc. Entries 21 at 14 n.6 [21-4 & 21-5, 21-10, 21-12]), plaintiff cites the April 4, 2008, decision of a Florida appellate court affirming the IFO's suspension of Allstate's Certificate of Authority to transact new insurance business in Florida where "[t]he suspension would terminate upon Allstate producing documents OIR previously subpoenaed in an investigation of Allstate's insurance practices." *Allstate Floridian Ins. Co. v. Office of Ins. Regulation*, No. 1D08-0275, 2008 WL 902876, *1 (Fla.App. 1 Dist. Apr. 4, 2008) (Doc. Ent. 21 at 15, Doc. Ent. 21-13). The court concluded that the Office of Insurance Regulation (OIR) "was not required to pursue enforcement of its subpoenas in circuit court. Suspension of Allstate's Certificates of Authority is one of OIR's available enforcement options. Because the IFO facially complies with the requirements of section 120.60(6),[10] Florida Statutes, it is AFFIRMED and the stay is lifted." *Allstate Floridian Ins. Co.*, 2008 WL 902876, *7.[11]

---

[10]"If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency may take such action by any procedure that is fair under the circumstances if:  (a) The procedure provides at least the same procedural protection as is given by other statutes, the State Constitution, or the United States Constitution; (b) The agency takes only that action necessary to protect the public interest under the emergency procedure; and (c) The agency states in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. The agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable. Summary suspension, restriction, or limitation may be ordered, but a suspension or revocation proceeding pursuant to ss. 120.569 and 120.57 shall also be promptly instituted and acted upon." F.S.A. § 120.60(6).

[11]Following the briefing and oral argument in the instant matter, the Florida Court's opinion was withdrawn and substituted by *All State Floridian Insurance Company v. Office of Insurance Regulation*, No. 1D08-0275, 2008 WL 2048349 (Fla.App. 1 Dist. May 14, 2008).  The May 14, 2008, opinion was written to clarify the previous opinion.  *Id*. at *1.  The court concluded, in part, "[t]he scope of OIR's investigation cannot be limited by Allstate's unilateral actions.  Suspension of Allstate's Certificates of Authority was one of OIR's statutorily available options when Allstate refused to cooperate in the investigation.  Because the IFO meets the requirements of section

Furthermore, plaintiff cites a media "Terms of Service" from defendant's website, which states in part: "If you accept the following terms and conditions you can link to approximately 150,000 pages of documents pertaining to a review of Allstate's claim practices conducted in the 1990s. Allstate was assisted in the review by business consulting firm McKinsey & Company." Doc. Ent. 21 at 15-16, Doc. Ent. 21-14.[12] It appears that these "Terms of Service" were posted on April 4, 2008. *See* http://media.allstate.com/releases?page=2. Plaintiff represents that "[a]t least a portion of the documents sought here are available and thus are not entitled to protection." Doc. Ent. 21 at 15-16.[13]

In addition to plaintiff's statement that defendant has not provided "a scintilla of evidence" to support its assertion that certain requests for admission are "unduly burdensome[,]"[14] plaintiff submits that "[t]he fact that Defendant was able to post 150,000 pages

120.60(6), Florida Statutes, it is AFFIRMED and the stay is lifted." *Id*. at *8.
On May 20, 2008, defendant sought discretionary jurisdiction review of the May 14, 2008, decision by the Supreme Court of Florida. OIR answered on May 22, 2008. See http://www.floir.com/pressreleases/advisory.aspx.

[12]The remainder of the "Terms of Service" provides: "The documents are being posted for informational and news media purposes only. By clicking on 'I accept' below, you acknowledge and agree that you will not alter any of the linked documents and will view them for informational and news media purposes only. Further, you acknowledge and agree that you have no ownership right or interest in the linked documents, will not represent that you have a right or interest and that you will not seek to use or transfer the documents in whole or in part in exchange for payment of any kind or use the linked documents for advertising, promotional or other commercial purposes. This is not intended to restrict the use of the documents for informational and news media purposes."

[13]In the wake of this posting, articles appeared in *The Herald Tribune*. *See* John Hielscher and Paige St. John, "Court upholds Allstate sales ban Ruling spurs the insurer to post thousands of pages of documents on the Web", April 5, 2008; Paige St. John, "How a get-tough policy lifted Allstate's profits", April 6, 2008. Doc. Ent. 21-3 at 11-14, 1-10.

[14]Plaintiff's brief appears to refer to defendants answers to Requests for Admission Nos. 12 and 13; however, these answers do not specifically refer to burdensomeness as an objection. Perhaps plaintiff was referring to defendant's "unduly burdensome" objections asserted as to

on its site for the public within hours of a court decision demonstrates the lack of undue burden in this matter." Doc. Ent. 21 at 16.

3.      **Thirteen (13) of the Requests for Admission (Nos. 7-13, 17, 19-20, 29, 31-32) concern CPMS or CCPR.**

Request No. 7 states, "[a]dmit Allstate implements a desk level [CPMS][,]" and Request No. 8 states, "[a]dmit Allstate Insurance Company uses the [CPMS] as a tool for performance management."

Also, Request No. 9 states, "[a]dmit the [CCPR] allows Allstate to take an objective look at how it handles claims[;]" Request No. 10 states, "[a]dmit one of the goals of the [CCPR] si so that Allstate can and should manage specific components of severity to provide greater financial support to the company[;]" Request No. 11 states, "[a]dmit that the [CCPR] allows Allstate to realize that the way it approaches claimants and develops relationships will significantly alter representation rates and contribute to lower severities[;]" Request Nos. 12 and 13 state, "[a]dmit that the [CCPR] directly impacts the manner in which claims adjusters have handled Scott Doan's claim[;]" Request No. 17 states, "[a]dmit that documents concerning Allstate's CCPR program ha[ve] been produced for public records[;]" Request No. 19 states, "[a]dmit that one of the initiatives of Allstate's CCPR program was to focus on increasing profits];]" Request No. 20 states, "[a]dmit that Allstate has tracked the increased profits generated by the implementation of the CCPR program[;]" and Request No. 29 states, "[a]dmit that Allstate determines the annual increase or increase for its employees salary based on the CCPR guidelines[;]" Request No. 31 states, "[a]dmit that Allstate's CCPR program was implemented in its claim operations

---

Requests for Production Nos. 1, 5, 7 & 26.

throughout the United States including the [S]tate of Michigan[;]" and Request No. 32 states, "[a]dmit that Allstate's CCPR program is required procedure for all claim personnel throughout the United States including the [S]tate of Michigan."

As to Request Nos. 7-12 and 17 defendant objected that "this request is irrelevant and unlikely to lead to the discovery of admissible evidence. Defendant further objects for the reasons set forth in its Motion to Strike Plaintiff's Request for Admissions and For Protective Order . . . . and that the [CPMS or CCPR] has no relevance or application to Defendant's handling of first party claims, specifically the claim as presented by Plaintiff." As to Request No. 13, defendant refers to its response to Request to Admit No. 12.

As to Request Nos. 19 and 20, defendant objects as follows: "This Defendant objects to this request insofar as the information sought is irrelevant and unlikely to lead to the discovery of admissible evidence. Further, this Defendant objects to this request insofar as the profit and/or loss of the Defendant corporation is irrelevant and would be prejudicial if admitted into evidence to this Defendant. The profit or loss of Allstate Insurance Company, and the specific year in which Allstate Insurance Company may have a profit or loss, does not have any impact upon the claims of the Plaintiff in this Michigan No-Fault claim, and is irrelevant under Michigan law and the Michigan No-Fault Act. As such, this Defendant objects to this request, and would direct the Plaintiff to the Defendant's Motion to Strike Plaintiff's Request for Admissions and for Protective Order[.]"

Defendant provided answers to Request Nos. 29, Request Nos. 31 and 32, which were similar to each other: "Objection, this request is irrelevant and unlikely to lead to the discovery of admissible evidence. Defendant further objects for the reasons set forth in its Motion to Strike

Plaintiff's Request for Admissions and for Protective Order . . . and that CCPR has no relevance or application to Defendant's handling of first party claims, specifically the claim as presented by Plaintiff."

In its March 21, 2008, motion brief, defendant contends that it is plaintiff's burden to show that the requests for admission related to defendant's employee compensation are relevant to this lawsuit. Doc. Ent. 16 at 13. According to defendant, certain recommendations were not implemented. Furthermore, defendant asserts that "the requested information constitute[s] secrets of Allstate Insurance Company and are not disclosed to the public, nor is it distributed amongst other insurance companies for handling of specific claims." Doc. Ent. 16 at 16. At the conclusion of its motion brief, defendant states: "As the information sought in Plaintiff's Requests to [A]dmit to Defendant constitute trade secrets, are confidential research and business information, and are wholly irrelevant to this action, Defendant requests that this Honorable Court strike Plaintiff's Requests for Admission[] and enter a protective order preventing disclosure of the materials requested by Plaintiff." Doc. Ent. 16 at 27.

However, each of defendant's objections to these thirteen (13) requests is overruled. Recent developments have trumped defendant's claim that it is "entitled to a protective order as to its trade secrets and other commercial information." Doc. Ent. 16 at 23. During the May 12, 2008, motion hearing, the Court was provided with a copy of an April 4, 2008, Allstate News Release titled, "Allstate Acts to Dispel Inaccurate Portrayal of Claim Practices[.]" The second line of the title states, "Accuracy is best served by making so-called 'McKinsey documents' public[.]" In part, this News Release provides:

Allstate announced today that it *publicly* released approximately 150,000 pages of documents pertaining to a review of its claim practices conducted in the 1990s. Allstate was assisted in the review by business consulting firm McKinsey & Co. . . .

We continue to believe that the documents deserve protection as containing trade secret and confidential proprietary information and that our actions to protect them from general disclosure have been appropriate. *However, because of the need to address misunderstandings resulting from the growing misplaced focus by our critics on very small pieces of the whole, we have decided to make the documents public.*

*See* http://media.allstate.com/categories/57/releases/4395 (emphasis added).

In Michigan, "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:  (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use[,] [and] (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Mich. Comp. Laws § 445.1902(d).  By the April 4, 2008, news release, defendant has waived any objection based upon Fed. R. Civ. P. 26(c)(1)(G) as to any of these approximately 150,000 documents.  This information is no longer, as defendant stated on March 21, 2008, "a trade secret and protected business information."  Doc. Ent. 16 at 24.  Nor is it entitled to protection on the basis that it is confidential research, development, or commercial information.  Also, based upon the public availability of this information, I conclude that good cause does not exist for entry of a protective order.  My conclusion is unchanged by defendant's assertion that the public's interest in this information is negligible.  Doc. Ent. 16 at 25.

Furthermore, to the extent defendant's relevance objection is based upon the distinction of first party from third party claims, plaintiff contends that "the medical and other benefits

20

available as first party benefits in Michigan are still recoverable in third party claims in other states.  Thus, the principles applicable to third party claims are not exclusive."  Doc. Ent. 21 at 11 n.3.  Also, I note Mathis's assertion that "[t]he manuals were not unique to either Washington or the Northwest Region, but to my knowledge were used throughout the nation including the [S]tate of Michigan[,]" Doc. Ent. 21-4 at 3 ¶ 10, as well as his assertion that he is "aware there are numerous manuals, guidelines and memoranda that were regularly disseminated among Allstate claims centers uniformly throughout the nation including the [S]tate of Michigan[,]" Doc. Ent. 21-4 at 4 ¶ 13.  Additionally, as Magistrate Judge Scheer stated in his March 26, 2007, order, "[w]hile my *in camera* review does not confirm whether claims handling policies implemented as a consequence of the ACE initiatives were applied to Plaintiff's case, that question is the proper subject of discovery."  Doc. Ent. 21-8.  Judge Scheer's reasoning is equally applicable to any relevance objection by defendant based upon its position that this is strictly a no-fault cause.  Plaintiff has asserted that his complaint "includes independent tort and statutory claims."  Doc. Ent. 21 at 2 ¶ 3.

Finally, to the extent defendant's objection is that the information would be prejudicial if admitted into evidence, such an objection might be the subject of a motion in limine pursuant to a Federal Rule of Evidence, such as Fed. R. Evid. 403 ("Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time").

For these reasons, defendant's objections to Requests for Admission Nos. 7-13, 17, 19-20, 29 and 31-32 are overruled.  Defendant shall provide responses to these requests for admission which comply with Fed. R. Civ. P. 36.

**4.    Three (3) of the Requests for Admission (Nos. 14-16) concern McKinsey Consulting, Inc.**

Request No. 14 states, "[a]dmit that Allstate used the services of McKinsey Consulting, Inc. in association with Allstate's claim handling in the creation of Allstate's CCPR[;]" Request No. 15 states, "[a]dmit that Allstate has maintained documents in association with their retention and association with McKinsey Consulting, Inc.[;]" and Request No. 16 states, "[a]dmit that McKinsey Consulting, Inc., was used by other insurers including competitors of Allstate."

To each of these requests, defendant has objected as follows: "Objection, this request is irrelevant and unlikely to lead to the discovery of admissible evidence. Defendant further objects for the reasons set forth in its Motion to Strike Plaintiff's Request for Admissions and for Protective order, currently pending before this Honorable Court, and that McKinsey Consulting, Inc., has no relevance or application to Defendant's handling of first party claims, specifically the claim as presented by Plaintiff."

Upon consideration, defendant's objections to Requests for Admission Nos. 14-16 are overruled. Defendant shall provide responses to these requests for admission which comply with Fed. R. Civ. P. 36.

5. **The remaining four (4) Requests for Admission (Nos. 22, 23, 24, 25) appear to relate to Florida litigation.**

Defendant contends that the Requests for Admission "also reference litigation with which Allstate was involved in the **State of Florida**, pertaining to the afore-referenced documents, which were produced to assist Allstate in the handling of **third party/bodily injury** claims, and are wholly irrelevant to this **first party** litigation in Michigan." Doc. Ent. 16 at 7 ¶ 14. Defendant contends that "any rulings made within the state of Florida pertaining to said

documents (or any other) are inapplicable and irrelevant to the present cause of action." Doc. Ent. 16 at 12.

Request No. 22 states, "[a]dmit that Allstate has been sanctioned as much as $25,000.00 per day for its refusal to produce documents ordered by a court." Request No. 23 states, "[a]dmit that Allstate has had its certificate of authority to sell insurance in the [S]tate of Florida for its refusal to produce document subpoenaed by Florida's [OIR]." Request No. 24 states, "[i]f the answers to 21 and/or 22 are in the positive, admit that Allstate has continued in the same claim practice processes and procedures in spite of admissions 21 and 22 stated above." Request No. 25 states, "[i]f the answers to 21 and/or 22 above are in the positive, admit that Allstate has no intention of changing its claim practice processes and procedures as a result of the admissions 21 and 22 stated above."

Aside from referring to the instant motion, defendant's answer to Request No. 22 is, "Objection, this request is irrelevant to the extent that it is believed that said request references a ruling within the [S]tate of Florida, which is inapplicable to the handling of Michigan No-Fault claims, which are subject to the Michigan No-Fault Act." This objection is overruled, as it is more appropriately the subject of a motion in limine. Defendant shall provide a response to this request for admission which complies with Fed. R. Civ. P. 36.

Defendants objection to Request No. 23 on the basis that it is "nonsensical as written[,]" is sustained. The Court suspects that plaintiff intended to inquire as to whether defendant's certificate of authority to sell insurance in the State of Florida has been revoked for defendant's refusal to produce documents subpoenaed by Florida's [OIR]; however, it would be improper for

the Court to order an answer based upon this assumption. Instead, plaintiff shall be permitted to rephrase and reserve Request for Admission No. 23.

My assessment of the answers to Request Nos. 24 and 25 is based upon an assumption that these requests contain typographical errors. Reading Request Nos. 21-25 together, it seems that Request Nos. 24 and 25 are meant to be linked to defendant's answers to Request Nos. 22 and 23, rather than defendant's answers to Request Nos. 21 and 22. If that is the case, I have sustained defendant's objection as to Request No. 23; however, I have overruled the objection as to Request No. 22. Accordingly, a further answer to Request Nos. 24 and 25 should be provided if defendant's answer to Request No. 23, if rephrased, or to Request No. 22, as stated, is answered in the affirmative.

**6.      A protective order will not be entered at this time.**

Defendant's position is that it "is entitled to a protective order for trade secrets and confidential business information requested by Plaintiff which is irrelevant to the pending litigation[.]" Doc. Ent. 16 at 2. Defendant contends that "Plaintiff's Requests for Admissions seek the disclosure of trade secrets, and confidential and proprietary information which is wholly irrelevant to the instant litigation, and will cause detrimental harm to Defendant if released and made accessible to competitors[.]" Doc. Ent. 16 at 8 ¶ 15. As previously noted, defendant seeks an order barring disclosure of requested documents. Doc. Ent. 16 at 8. Defendant contends that disclosure of the requested materials would "be detrimental to Allstate's ability to compete in the industry, as said materials are an essential part of Allstate's business[,]" and "permit competitors to appropriate Allstate's trade secrets by duplicating or reconstructing their claims handling procedures." Doc. Ent. 16 at 10. *See also* Doc. Ent. 16 at 17.

Plaintiff contends that defendant's motion "is only about the requests for admission." Doc. Ent. 21 at 6-7. E.D. Mich. LR 37.2 provides that "[a]ny discovery motion filed pursuant to Fed. R. Civ. P. 26 through 37, shall include, in the motion itself or in an attached memorandum, a verbatim recitation of each interrogatory, request, answer, response, and objection which is the subject of the motion or a copy of the actual discovery document which is the subject of the motion." Although the language of the motion, such as the aforementioned ¶ 15, suggests that defendant is contesting production in response to the requests for production of documents, only the Requests for Admission in *Berry v. Allstate Insurance Company*, Case No. 2:07-cv-14627-MOB-SDP, were attached to defendant's motion. Doc. Ent. 16-3.[15]

Nonetheless, during the May 12, 2008, hearing, defense counsel provided the Court with copies of (1) defendant's March 24, 2008, answers to plaintiff's February 21, 2008, requests for production of documents and (2) defendant's March 21, 2008, answers to plaintiff's first request for admissions. Requests for Production Nos. 19 and 20 seek copies of CCPR manuals. Request for Production No. 32 seeks "a copy of Allstate's 'CCPR Tracking Reports' for Michigan since the date of Plaintiff's accident to the present." The answers to each of these questions states, "[t]his Defendant objects to this request as seeking information and documentation which is proprietary, and not relevant to the Plaintiff's claims in this matter. Further, this Defendant would direct the Plaintiff to the Defendant's Motion for Protective Order and to Strike previously filed."

---

[15]On April 7, 2008, defendant withdrew its motion to strike requests to admit and motion for protective order. Doc. Ent. 16 (Case No. 2:07-cv-14627-MOB-SDP).

The brief in support of defendant's motion states as follows: "Based upon the fact that this material is proprietary information, contains copyrighted material, and based upon the fact that this material has no relevance to the claims at issue in this litigation, this Defendant would request that this Court deny the Plaintiff's request for this material and deny any request to copy and/or publish copyrighted and/or proprietary information in this regard. Further, this Defendant would seek Protective Order protecting this Defendant from any request related to the [CCPR, CPMS], and McKinsey documents as said material bears no relevance to this litigation." Doc. Ent. 16 at 17.

It appears to the Court that defendant's request for a protective order would apply to any production beyond what has already been provided by defendant's March 24, 2008, answers, such as any supplemental production made in accordance with the instant order on the motion to strike. Considering the timing of defendant's March 24, 2008, answers to the requests for production of documents, served after the instant March 21, 2008, motion, and any effect the instant ruling would have on defendant's need to supplement its March 24, 2008, answers, it would be preferable to address the need for a protective order either by a motion to compel by the plaintiff pointing to specific answers with which plaintiff is dissatisfied or by a separate motion for protective order by the defendant pointing to specific documents required to be produced in accordance with my ruling on the motion to strike but over which defendant seeks a protective order. Any such motions should take into consideration the instant ruling.

**II.     ORDER**

In accordance with the foregoing, defendant's motion to strike plaintiff's requests for admission and motion for protective order (Doc. Ent. 16) is DENIED. Defendant shall provide to plaintiff any further answers to requests for admission required in the above opinion within fourteen (14) days of the entry of this order.

Furthermore, plaintiff's request for an award of costs and attorney fees (Doc. Ent. 21 at 2-3, Doc. Ent. 21 at 16) is DENIED.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 5/23/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on May 23, 2008.

s/Eddrey Butts
Case Manager